1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Cory D. Morris,                          No. CV-17-00926-PHX-DGC

10                   Petitioner,              **ORDER**

11   v.                                       <u>DEATH PENALTY CASE</u>

12   Ryan Thornell, et al.,[1]

13                   Respondents.

14

15        Cory Morris is an Arizona death row inmate seeking federal habeas relief.  Before

16   the Court is his motion for stay and abeyance.  (Doc. 81; *see* Docs. 82, 83.)  He asks the

17   Court to stay this habeas proceeding and hold it in abeyance while he returns to state court

18   to exhaust three claims in his habeas petition related to an alleged violation of his due

19   process right to be sentenced by a jury correctly informed of his ineligibility for parole.

20   (*Id.*)  He also asks the Court to appoint his federal habeas counsel to represent him on his

21   return to state court.  (*Id.* at 21–25.)  Respondents oppose a stay but take no position on

22   Morris's request for authorization of counsel to represent him in state court.  (Doc. 82.)

23   **I.    BACKGROUND**

24        On April 12, 2003, Morris's uncle discovered the decomposing body of Julie

25   Castillo in Morris's camper.  Morris initially explained to police officers that Castillo and

26   _____

27   [1] Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Ryan Thornell, the Director of
     the Arizona Department of Corrections, Rehabilitation and Reentry, is substituted for
28   former Director David Shinn.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

four other women whose bodies were found nearby over the previous six months all died of drug overdoses in his camper while he was away.  Later, Morris stated that each victim asked him to choke her during sex and that each accidentally died as a result.

In 2005, Morris was convicted of the first-degree murders of Barbara Codman, Shanteria Davis, Jade Velasquez, Sharon Noah, and Julie Castillo.  *State v. Morris*, 215 Ariz. 324, 332, 160 P.3d 203, 211 (2007).  The jury found two aggravators: that Morris had been convicted of a prior serious offense and that he had committed all five murders in an "especially cruel" and "especially heinous or depraved manner."  *Id.* at 332, 160 P.3d at 211; A.R.S. § 13-703(F)(2), (4), renumbered as A.R.S. § 13-751.

The jury found the mitigating evidence was not sufficiently substantial to call for leniency and sentenced Morris to death.  *Morris*, 215 Ariz. at 332, 160 P.3d at 211.  The Arizona Supreme Court affirmed Morris's convictions and sentences in 2007.  *Id.* at 343, 160 P.3d at 222.

On February 20, 2018, following unsuccessful state post-conviction proceedings, Morris filed his Petition for Writ of Habeas Corpus.  (Doc. 21.)  In Claim 13 of his petition, Morris seeks relief for a violation of his due process right to be sentenced by a jury correctly informed of his ineligibility for parole under *Lynch v. Arizona*, 578 U.S. 613 (2016) (per curiam), and *Simmons v. South Carolina*, 512 U.S. 154 (1994).  (Doc. 21 at 251–56.)  In Claims 3(B)(1) and 22(D), Morris seeks relief based on the ineffective assistance of trial and appellate counsel in failing to raise the *Simmons* issue.  (*See* Doc. 21 at 165–69, 298.)  Morris concedes these claims were not raised in state court.  (*Id.* at 164, 251, 290.)

On September 14, 2022, Morris sought an unopposed motion to stay these proceedings pending the outcome in *Cruz v. Arizona*, 143 S. Ct. 650 (2023), which the Court granted.  (Docs. 73, 74.)  On February 22, 2023, the United States Supreme Court decided *Cruz*, and on May 08, 2023, Morris filed the pending motion.  (Doc. 81.)  If granted, a stay would allow him to return to state court to exhaust his *Simmons*-based claims.  (*Id.* at 2.)

## II.      APPLICABLE LAW

### A.      *Simmons, Lynch, Cruz*

In *Simmons*, the United States Supreme Court held that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Cruz v. Arizona*, 598 U.S. ---, 143 S. Ct. 650, 655 (2023) (quoting *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001); *Kelly v. South Carolina*, 534 U.S. 246, 248 (2002)).

Until 2012, Arizona law permitted imposition of a parole-eligible life sentence for defendants convicted of first-degree murder.  *See* A.R.S. § 13–703(A) (2000), renumbered as A.R.S. § 13–751(A).  In 1994, however, Arizona had abolished parole for all felonies committed after 1993.  A.R.S § 41–1604.09(I)(1).  Therefore, "the only 'release' available to capital defendants convicted after 1993 was, and remains, executive clemency."  *Cruz*, 143 S. Ct. at 655.  Nonetheless, the Arizona Supreme Court refused to apply *Simmons* in Arizona on the grounds that Arizona's sentencing scheme was sufficiently distinct from the one at issue in *Simmons*.  *See Cruz*, 143 S. Ct. at 655 (discussing history of the application of *Simmons* in Arizona).  The Supreme Court summarily rejected this reasoning in *Lynch,* holding that "it was fundamental error to conclude that *Simmons* 'did not apply' in Arizona."  *Id*. at 654 (quoting *Lynch*, 578 U.S. at 615).

In *Cruz*, the defendant argued at trial and on appeal that under *Simmons* he should have been allowed to inform the jury that a life sentence in Arizona would be without parole.  The trial court and the Arizona Supreme Court held that Arizona's capital sentencing scheme did not trigger application of *Simmons*.  *State v. Cruz*, 218 Ariz. 149, 181 P.3d 196 (2008).  Cruz sought to raise the *Simmons* issue again, after the United States Supreme Court issued its holding in *Lynch*, in a petition for post-conviction relief ("PCR") under Arizona Rule of Criminal Procedure ("Rule") 32.1(g), which permits a defendant to bring a successive petition if "there has been a significant change in the law that, if

applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." The Arizona Supreme Court denied relief, concluding that *Lynch* was not "a significant change in the law." *State v. Cruz*, 251 Ariz. 203, 487 P.3d 991 (2021). The United States Supreme Court disagreed, vacating the Arizona Supreme Court's judgment and remanding the case. *Cruz*, 143 S. Ct. at 662. The Court found that *Lynch* "overruled binding Arizona precedent" and represented a "clear break from the past." *Id.* at 658–59.

B. *Rhines*

*Rhines v. Weber*, 544 U.S. 269, 273–77 (2005), authorizes a district court to stay a petition in "limited circumstances" to allow a petitioner to present unexhausted claims to the state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations.

Under *Rhines*, "a district court must stay a mixed petition"—that is, a petition containing both exhausted and unexhausted claims—"only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). The latter form of exhaustion is described as "technical exhaustion" through procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007); *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In Arizona, Rule 32 provides that a petitioner is procedurally barred from relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). A petitioner generally may not return to state court to exhaust a claim unless it falls within the category of claims for which a successive PCR petition is permitted. *See Ariz. R. Crim. P. 32.1(b)–(h), 32.2(a) & (b).

1    A *Rhines* stay would be inappropriate in a federal habeas case if the claims for which

2  a petitioner seeks a stay are technically exhausted through procedural default.  *See e.g.*,

3  *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28,

4  2017); *White v. Ryan*, No. CV-09-2167PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz.

5  March 16, 2010) ("Because the Petition in this case contains claims that are either actually

6  or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

7  **III.    ANALYSIS**

8    Morris seeks a stay so he can raise Claims 13, 3(B)(1), and 22(D) of his habeas

9  petition in state court. (Doc. 81.)

10    A.    Claim 13

11    In Claim 13, Morris alleges that his due process and Eighth Amendment rights were

12  violated when the jury was incorrectly instructed that if given a life sentence, he could be

13  eligible for parole.[2]  (Doc. 21 at 251.)  Morris did not present this claim in state court. (*See*

14  *id.*)  In their answer to the petition, Respondents argue that this claim is technically

15  exhausted and procedurally defaulted because Morris is barred from returning to state court

16  to exhaust it.  (Doc. 27 at 153.)

17    In addressing the motion to stay, Respondents do not dispute that Morris has shown

18  good cause for his failure to exhaust the claim, do not contend that Morris has been

19  intentionally dilatory, and agree with Morris that *Cruz* may provide "a procedural avenue

20  to exhaust Claim 13 in state court."  (Doc. 82 at 4.)  The Court agrees with this analysis

21  and finds that Morris has demonstrated good cause for his failure to exhaust Claim 13 in

22  state court and that he did not engage in dilatory litigation tactics.

23

24  ---

[2] In Claim 13, Morris asserts the incorrect jury instruction at issue violated both his due

25  process and Eighth Amendment rights.  (*See* Doc. 21 at 251–56.)  Here, Morris seeks to

26  stay his petition and return to state court to exhaust only his due process claim under

27  *Simmons*, and this is the only portion of the claim this Court here considers.  (*See* Doc. 81
   at 9); *see also Simmons,* 512 U.S. at 162 n. 4 (reserving Eighth Amendment question); *id.*

28  at 174 (Ginsburg, J., concurring) (narrowly construing holding to due process aspects).

Respondents also do not dispute that Morris's future dangerousness was at issue or that he would have been entitled to a *Simmons* instruction if he had asked for one.  (*See id.* 4–5); *see also Kelly*, 534 U.S. at 252 (future dangerousness is at issue when it is a logical inference from the evidence or the State injects it through closing argument).  Nonetheless, Respondents argue Claim 13 is plainly meritless because Morris did not request a parole-ineligibility instruction.  (Doc. 82 at 4) (citing *State v. Bush*, 244 Ariz. 575, 423 P.3d 370, 387–88 (2018)).  Morris concedes his trial counsel did not request such an instruction.  (*See* Doc. 21 at 166) (citing RT 07/13/05 at 3–4).

A claim is potentially meritorious unless "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Dixon v. Baker*, 847 F.3d 714, 722–23 (2017) (finding claim met second prong of *Rhines* test because it was not "plainly meritless"); *Rhines*, 544 U.S. at 277  (a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless.").  "In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'"  *Dixon*, 847 F.3d at 722 (quoting *Cassett*, 406 F.3d at 624).

The Court finds that Morris has "no hope of prevailing" on his *Simmons* claim – it is plainly meritless and will be denied.  *See Cassett,* 406 F.3d at 624; 28 U.S.C. § 2254(b)(2).  The Arizona Supreme Court's decision in *Bush* explains the due process holding of *Simmons* and validates Respondents' argument that Morris has failed to present a colorable claim.

Parsing the plurality opinion in *Simmons*, *Bush* found Justice O'Connor's opinion, separately concurring in the judgment with Chief Justice Rehnquist and Justice Kennedy, represented the "'narrowest ground[]' that 'may be viewed as [the] position taken by' the

Court on the issue of what due process requires in this context.'" *Bush*, 244 Ariz. at 592, 423 P.3d at 387 (quoting *Marks v. United States*, 430 U.S 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .") (internal quotation omitted).  *Bush* held that "the due process right under *Simmons* merely affords a parole-ineligible capital defendant the right to 'rebut the State's case' (if future dangerousness is at issue) by informing the jury that 'he will never be released from prison' if sentenced to life." *Id.* (quoting *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment)); *see also O'Dell v. Netherland*, 521 U.S. 151,  159 (1997) (noting that in *Simmons* "there was no opinion for the Court" and that four Justices merely "concluded that the Due Process Clause required allowing the defendant to inform the jury—through argument or instruction—of his parole ineligibility in the face of a prosecution's future dangerousness argument").  Morris cites no controlling authority finding *Simmons* error where a defendant has failed to request a parole ineligibility instruction in response to the State's assertion of future dangerousness.

In *Bush*, the Arizona Supreme Court noted that in every case in which either it or the United States Supreme Court has found reversible *Simmons* error, the trial court had "either rejected the defendant's proposed jury instruction regarding his ineligibility for parole, prevented defense counsel 'from saying anything to the jury about parole ineligibility' or both." *Id.* at 593, 423 P.3d at 388 (citing *Simmons*, 512 U.S. at 175 (Ginsburg, J., concurring); *Lynch*, 578 U.S. at 614 (both); *Kelly*, 534 U.S. at 249 (refusal to inform); *Shafer*, 532 U.S. at 41–46 (both); *State v. Hulsey*, 243 Ariz. 367, 394, 408 P.3d 408, 435 (both); *State v. Rushing*, 243 Ariz. 212, 221, 404 P.3d 240, 249 (2017) (refusal to inform); *State v. Escalante-Orozco*, 241 Ariz. 254, 284, 386 P.3d 798, 828 (2017) (refusal to inform)). The *Bush* court concluded that relief under *Simmons* was foreclosed because, "[u]nlike in the aforementioned cases" in which courts found reversible *Simmons* error, "the trial court neither refused to instruct, nor prevented Bush from informing, the jury

1    regarding his parole ineligibility." *Id.*

2         Morris asserts that the court in *Bush* had no occasion to determine how failing to

3    request a parole ineligibility instruction would operate in the context of the change in law

4    wrought by *Lynch* and *Cruz*.  In *Bush*, however, the court acknowledged that the trial

5    court's jury instruction, referring to the possibility of release after 35 years, was

6    "apparently . . . incorrect" under the Supreme Court's opinion in *Lynch*.  *Bush*, 244 Ariz.

7    at 592, 423 P.3d at 387.  The court nonetheless found *Simmons* relief foreclosed by the

8    defendant's failure to request a *Simmons* instruction.   Although, as Respondents

9    acknowledge, *Cruz* may provide an avenue for Morris to seek to raise the claim in state

10   court, Morris fails to demonstrate how either *Lynch* or *Cruz* calls into question the *Bush*

11   court's *Simmons* analysis.  Stated differently, while *Cruz* may establish a route for Morris

12   to actually exhaust the claim in state court, *Cruz* does not speak to the merits of Morris's

13   *Simmons* claim.

14        Morris contends that *Bush* is distinguishable because it provided a vague instruction

15   about the availability of "release after 35 years," *Bush*, 244 Ariz. at 590–91, 423 P.3d at

16   385–86, presumably invoking the possibility of executive clemency, which at that time the

17   Arizona Supreme Court incorrectly thought distinguished its sentencing and parole

18   schemes from those at issue in *Simmons*.  *See Lynch*, 578 U.S. at 615.  Morris asserts, in

19   contrast, that his jury was affirmatively and incorrectly instructed that he could receive

20   "parole."  (Doc. 83 at 4.)  At the aggravation phase of Morris's trial, the court instructed:

21       If you do not unanimously find the state has proved at least one aggravating
         factor, your jury service will end and the Court will sentence the defendant
22       either to natural life imprisonment without the possibility of parole or life
         imprisonment without possibility of parole until at least 25 years have been
23       served.
24

25   (ROA 153 at 5; RT 7/12/05 at 18.) Subsequently, during the penalty phase, the trial court

26   instructed the jurors:

27       If your verdict is that the Defendant should be sentenced to life, the
         Defendant will not be sentenced to death, and the Court will sentence the
28       Defendant to either life without the possibility of release until 25 calendar

years in prison are served, or "natural life," which means the defendant would
never be released from prison.

(ROA 163 at 9; ROA 169 at 7; RT 7/14/05 at 10; RT 7/18/05 at 96–97.)[3] As discussed
above, these instructions were an incorrect statement of the law regarding parole eligibility.
Thus, Morris asserts, even assuming the Arizona Supreme Court's interpretation in *Bush*
would control how it would resolve a similar case under Rule 32.1(g), it does not indicate
how the Arizona Supreme Court would apply *Simmons* in a case like Morris's, where the
trial court affirmatively "misle[]d the jury as to its role in the sentencing process." (Doc. 83
at 5) (quoting *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)).[4]

The Court finds no meaningful distinction between the incorrect instructions
provided in *Bush* and the incorrect instructions the trial court gave here. In *State v. Riley*,
248 Ariz. 154, 195, 459 P.3d 66, 107 (2020), which was decided after *Bush*, the trial court
informed the jury that Riley could be "sentenced to life in prison with the possibility of
release in 25 years." The Arizona Supreme Court nonetheless reiterated that, after *Bush*,
no *Simmons* error occurs when counsel is afforded the opportunity to object to the jury
instructions but declines. *Id.*

In contrast, the Arizona Supreme Court in *Hulsey* examined the record and, finding
no indication that Hulsey waived any objection to a jury instruction mentioning release or
wanted future dangerousness to go unrebutted, proceeded to consider the merits of
Hulsey's *Simmons* claim. *Hulsey*, 243 Ariz. at 398, 408 P.3d at 437 (2018).

Morris points to the State's admission, in its supplemental *Cruz* brief on remand,

---

[3] Indexed documents from the record on appeal are designated "ROA" followed by the
docket number. "RT" followed by the relevant date and page number refers to the reporter's
transcripts of Morris's trial.

[4] The portion of *Romano* quoted by Morris refers to a so-called "*Caldwell* violation,"
established by demonstrating that a trial judge's instructions violate the Eighth Amendment
by leading the sentencer to believe that responsibility for determining the appropriateness
of a death sentence rests elsewhere. *See Caldwell v. Mississippi*, 472 U.S. 320, 328–39
(1985). As previously discussed, *supra*, n.4, Morris's motion to stay does not address the
Eighth Amendment violation he asserted in Claim 13.

that "[u]nlike historical *Simmons* cases—where the jury instructions are potentially misleading because they omit mention of parole ineligibility—Cruz's jury," like Morris's, "was affirmatively and incorrectly instructed that Cruz was eligible for parole. Thus, even more than in *Simmons*, the instruction here surely left the jury with what *Simmons* called a 'grievous misperception.'" (Doc. 83 at 4–5) (citing Doc. 81-2, Ex. A at 1). But the degree of misperception is not a factor in consideration of a *Simmons* claim. The *Simmons* due process right is implicated any time the State calls into question, implicitly or explicitly, a defendant's future dangerousness. In that event, the violation is established by showing that defendant's counsel was prevented from informing the jury that a defendant was not parole eligible or that the trial court refused to give a parole ineligibility instruction. *See Cruz*, 143 S. Ct. at 655 (explaining that "due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.") (internal quotation omitted).

Alternatively, Morris asserts that even if *Bush* controls in the Rule 32.1(g) context, and its procedural requirements extend to cases with falsely instructed juries, Respondents have failed to address the argument that *Bush* was "implicitly complied with" in this case because the State moved to "preclude evidence or argument claiming there is no possibility of parole under Arizona law" and requested that the jury "be advised of the three possible sentences facing [Morris]." (Doc. 83 at 5) (quoting ROA 76). Morris apparently did not object, and the trial court did not formally rule on the motion. Yet Morris argues this State action makes his case less like *Bush* and more like *Hulsey*, which found a "trial court's order precluding discussion of parole ineligibility was error and not harmless." (Doc. 83 at 6) (quoting *Hulsey*, 243 Ariz. at 395, 408 P.3d at 436).

Unlike Morris, however, Hulsey preserved his *Simmons* argument by, among other things, objecting to the instructions and asking the court to delete any mention of the "possibility of release." *Hulsey*, 243 Ariz. at 394, 408 P.3d at 435. Morris points the Court to no controlling authority that recognizes a *Simmons* due process claim as anything more than a waivable right of "opportunity" or "rebuttal." *See O'Dell*, 521 U.S. at 167

(describing *Simmons* as a "narrow right of rebuttal"); *Townes v. Murray*, 68 F.3d 840, 850 (4th Cir. 1995) ("[T]he fact that a jury was not informed of the defendant's parole ineligibility would not violate the defendant's due process rights, as recognized by *Simmons*, if that lack of information was due to the defendant's own inaction."). *But see State v. Laney*, 367 S.C. 639, 645–46, 627 S.E.2d 726, 730 (S.C. 2006) (holding that when the requirements of *Simmons* are satisfied, "the trial judge shall charge the jury, whether requested or not, that life imprisonment means until the death of the defendant without the possibility of parole").

Morris asserts that the United States Supreme Court's recent remand of six cases raising *Simmons*-based due process claims, including four where the petitioners never sought a parole ineligibility instruction in the manner noted in *Bush*, calls into question that court's interpretation of *Simmons*. (*See* Doc. 83 at 3) (citing *Burns v. Arizona*, 143 S. Ct. 997, 998) (Mar. 6, 2023) (mem.)). The Court disagrees. The narrow issue presented in *Burns* was "the same question presented" in *Cruz*—[w]hether the Arizona Supreme Court's holding that Arizona Rule of Criminal Procedure 32.1(g) precluded post-conviction relief is an adequate and independent state-law ground for the judgment, *see Burns v. Arizona*, Joint Petition for Writ of Certiorari, No. 21-847 (U.S. Oct. 4, 2021)—and does not instruct this Court on the merits of the *Simmons* claim presented here. *See e.g.*, *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

In sum, the Court finds Morris's *Simmons* claim is plainly meritless because Morris "has not shown that he was deprived of the right to inform the jury of his parole ineligibility." *See Riley*, 244 Ariz. at 593, 423 P.3d at 388. Accordingly, the portion of Claim 13 alleging a *Simmons* violation is denied as meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rhines*, 544 U.S. at 277 (a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless");

1    *Cassett*, 406 F.3d at 623–24  (holding that a federal court may deny an unexhausted petition

2    on the merits when the petition does not raise a colorable federal claim).

3            B.      Claims 3(B)(1) and 22(D)

4            Under *Rhines*, and in light of the Court's denial of Claim 13, the Court must

5    determine whether Morris's habeas petition remains mixed.  At issue are two ineffective

6    assistance of counsel (IAC) claims – Claims 3(B)(1), and 22(D).  In Claim 3(B)(1), Morris

7    alleges that trial counsel was ineffective for failing to object to the trial court's instruction

8    as to Morris's parole eligibility.  (Doc. 21 at 165–69.)  In Claim 22(D), he alleges that

9    appellate counsel was ineffective for failing to challenge the jury instruction regarding

10   Morris's eligibility for parole.  (Doc. 21 at 298.)  Though Morris raised other allegations

11   of ineffectiveness in state court PCR proceedings, he did not raise these *Simmons*-related

12   claims in his PCR.  (*See* ROA 307 at 3–56.)

13           If Morris were to return to state court and attempt to exhaust these ineffective

14   assistance claims, the claims would be found waived under Rule 32.2(a) because they do

15   not fall within an exception to preclusion.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(b)–(h); *see*

16   *also State v. Spreitz*, 202 Ariz. 1, 2, 39 P.3d 525, 526 (2002) ("Our basic rule is that where

17   ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32

18   post-conviction relief proceeding, subsequent claims of ineffective assistance will be

19   deemed waived and precluded.").  Therefore, Claims 3(B)(1) and 22(D) are "technically"

20   exhausted but procedurally defaulted because Morris no longer has an available state

21   remedy.  *Coleman*, 501 U.S. at 732, 735 n. 1.

22           Morris notes that Rule 32.2(a)(3) does not apply to claims that "affected a right of

23   constitutional magnitude" if the petitioner did not personally waive the claim.  (Doc. 83 at

24   6) (citing *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002)).  Morris's

25   ineffective assistance of counsel claims, however, do not fall within the limited framework

26   of claims requiring a knowing, voluntary, and intelligent waiver before the application of

27   a preclusion finding.  *See* Ariz. Rule Crim. Proc. 32.2(a)(3) cmt. (West 2004) (explaining

28   that most claims of trial error do not require a personal waiver); *Smith*, 202 Ariz. at 449,

46 P.3d at 1070 (identifying the right to counsel, right to a jury trial, and right to a 12-person jury under the Arizona Constitution as the type of claims that require personal waiver). Additionally, if different ineffective assistance allegations are raised in successive petitions, the claim in the later petition will be precluded without a review of the constitutional magnitude of the claim. *See Smith*, 202 Ariz. at 450, 46 P.3d at 1071 ("The ground of ineffective assistance of counsel cannot be raised repeatedly.") In his PCR petition, Morris raised several other claims of ineffective assistance of counsel. (*See* ROA 307 at 3–56.) Because a successive petition would not be Morris's first petition raising claims of ineffective assistance of counsel, the Court need not address the nature of the right affected by counsel's ineffective performance. *See id.* Morris's successive claims of ineffective assistance, such as Claims 3(B)(1) and 22(D), are necessarily precluded. *See Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820, at *6 (D. Ariz. Mar. 28, 2017) ("Because Petitioner would not be able to exhaust Claim 1(A) in a successive state petition for post-conviction relief, Petitioner's IAC claim is 'technically' exhausted, and a *Rhines* stay would be inappropriate."); *see also Lopez v. Schriro*, No. CV-98-0072-PHX-SMM, 2008 WL 2783282, at *9 (D. Ariz. July 15, 2008) ("[I]f additional ineffectiveness allegations are raised in a successive petition, the claims in the later petition necessarily will be precluded."), *amended in part*, 2008 WL 4219079 (D. Ariz. Sept. 4, 2008), *aff'd sub nom. Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011) and *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 818 (2015).

Morris also asserts that "the procedural rules regarding successive or untimely postconviction applications are inconsistently applied to capital cases, and merits review is often available." (Doc. 81 at 18.) This argument is unavailing where two of the cases cited by Morris involved timeliness issues[5], and in the third the trial court found petitioner's IAC claim raised in a second petition precluded because he had previously asserted the

---

[5] *State v. Prince*, No. 1 CA-CR 95-0413-PR, 1996 WL 91519 (Ariz. Ct. App. Mar. 5, 1996), *review denied and order depublished* (Sept. 17, 1996); *id.* at *7 (Thompson, J., dissenting); (Doc. 60-2, Ex. C at 2 (Minute Entry, *State v. Lambright*, No. CR-05669 (Pima Cnty. Super. Ct. Apr. 5, 1993).

1 ineffectiveness claim in his first PCR.[6] Even if the cases demonstrated inconsistency in

2 Arizona's timeliness rulings, they do not call into doubt Arizona's preclusionary rules. The

3 Ninth Circuit has held that Rule 32.2(a)(3) "is independent of federal law and has been

4 regularly and consistently applied, so it is adequate to bar federal review of a claim." *Jones*

5 *v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).

6  Morris asserts he may obtain merits review in state court of his unexhausted IAC

7 claims through the Arizona Supreme Court's original habeas jurisdiction, *see* Ariz.Const.

8 art. II, § 14 ("The privilege of the writ of habeas corpus shall not be suspended by the

9 authorities of the state."); *see also* Ariz. R Crim. P. 32.3 cmt. (noting that Rule 32 "does

10 not restrict the scope of the writ of habeas corpus."). Morris cites no authority, and the

11 Court is aware of none, demonstrating the availability of a writ of habeas corpus to address

12 claims of ineffective assistance of counsel. In Arizona, "the writ of habeas corpus may be

13 used only to review matters affecting a court's jurisdiction." *In re Oppenheimer*, 95 Ariz.

14 292, 297, 389 P.2d 696, 700 (1964). Thus, "[t]he writ of habeas corpus is not the

15 appropriate remedy to review irregularities or mistakes in a lower court unless they pertain

16 to jurisdiction." *State v. Court of Appeals*, 101 Ariz. 166, 168, 416 P.2d 599, 601 (1966).

17 Rule 32.3(b), provides: "If a court receives any type of application or request for relief—

18 however titled—that challenges the validity of the defendant's conviction or sentence

19 following a trial, it must treat the application as a petition for post-conviction relief." *See*

20 *also* A.R.S. § 13-4233 (if defendant applies for writ of habeas corpus attacking validity of

21 conviction or sentence, court shall treat it as petition for post-conviction relief).

22  Next, citing *State v. Bennett*, 213 Ariz. 562, 146 P.3d 63 (2006), Morris argues that

23 the state PCR court's removal of the lawyer who filed Morris's PCR petition, based on a

24 conflict of interest that impaired her ability to assert claims challenging trial counsel's

25 performance, allows Morris to file a successor petition raising any colorable IAC claims

26 she failed to preserve. (Doc. 83 at 19) (citing ROA 419, 420). In *Bennett*, the Court

27 concluded that where appellate counsel represented the petitioner in her first PCR, a second

28

---

[6] *Williams v. Schriro*, 423 F. Supp. 2d 994, 1000 (D. Ariz. 2006).

1  PCR petition was the first proceeding in which she could raise the ineffective assistance of
2  appellate counsel argument, and therefore Rule 32.2(a)(3) did not preclude an ineffective
3  assistance of appellate counsel claim.  *Bennett*, 213 Ariz. at 566, 146 P.3d at 67.  What
4  Morris does not address, however, is that the court in his case granted him permission to
5  amend his petition to include new IAC claims after his first PCR counsel was removed and
6  new counsel was appointed.  (ROA 437.)  Morris fails to show how he was still unable to
7  raise a claim alleging the ineffectiveness of trial counsel for failure to raise a *Simmons*
8  claim.

9  Relying on *Fitzgerald v. Myers*, 243 Ariz. 84, 402 P.3d 442, (2017), Morris further
10  contends that his incompetence during state PCR proceedings may constitute cause to
11  excuse an otherwise procedurally barred claim.  (Doc. 81 at 20.)  *Fitzgerald* does not
12  support this contention.  In *Fitzgerald*, the Arizona Supreme Court held that there is no
13  right to competency in PCR proceedings under Arizona Statute or Rule.  *Fitzgerald*, 243
14  Ariz. at 86, 402 P.3d at 445.  The Arizona Supreme Court did not address the question of
15  whether a petitioner has a due process right to competency in PCR proceedings because
16  the issue was not properly raised.  *Id.* at 92, 402 P.3d at 451.  The court recognized that
17  sometimes "a capital defendant's input and participation regarding a particular Rule 32
18  claim are needed and perhaps imperative."  *Id.* at 92.  Morris asserts that evidence that he
19  was incompetent throughout state court proceedings, and that his counsel were ineffective
20  for failing to discover his incompetency, would entitle him to merits review of his IAC
21  claims regardless of state procedural bars.  (Doc. 81 at 20.)  The Court is not convinced
22  that this is the type of Rule 32 claim the Arizona Supreme Court was contemplating in
23  *Bennett*.  Even if Morris was incompetent during state court proceedings, he has failed to
24  argue, much less show, that his "input and participation" regarding his *Simmons* IAC
25  claims were necessary or imperative.

26  Finally, the Court addresses Morris's argument that this Court should allow the
27  Arizona courts to consider adopting a *Martinez*-like exception for IAC claims defaulted
28

due to previous PCR counsel's deficient performance.[7]  (Doc. 81 at 20.)

In support, Morris cites *Pandeli v. Shinn*, No. CV-17-01657-PHX-JJT, 2022 WL 16855196, at *4–5 (D. Ariz. Nov. 10, 2022).  Pandeli successfully argued for a stay and abeyance of his petition in order to return to state court and attempt to exhaust an IAC claim.  *Pandeli* is distinguishable, however, because the Respondents in that case conceded the habeas petition was mixed.

In contrast, Respondents argue that Claim 3(B)(1) is technically exhausted (Doc. 2 at 8.), making *Pandeli* inapposite.  *See Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Smith*, 510 F.3d at 1139 (observing that if state court where petitioner would be required to present the claims would find the claims procedurally barred, petitioner has technically exhausted the claims through procedural default).  As a result, Morris is not entitled to a *Rhines* stay to exhaust Claim 3(B)(1).[8]  *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009) (explaining that the *Rhines* exception to the total exhaustion rule carved out an exception allowing mixed petitions to remain pending in federal court under limited circumstances).

Morris asserts that after the Supreme Court's recent decision in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), "actual rather than technical exhaustion is now a necessary step for petitioners to obtain the benefits of *Martinez*."  (Doc. 81 at 21.)  Actual exhaustion is necessary, Morris contends, to afford "States 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights[.]'"  *Ramirez*, 142 S. Ct. at 1732 (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)); *see also Rhines*, 544

---

[7] In addition to the *Simmons*-related IAC claim, Claim 3(B)(1), Morris also argues the Court should stay his case to permit him to exhaust several other IAC claims (Claims 1(D), 4, 5(B)) and an ineffective assistance of postconviction counsel claim (Claim 48). The Court denies this request for the same reasons it denies the motion to stay Claim 3(B)(1).

[8] The *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel, *see Davila v. Davis*, 582 U.S. 521, 525, 529 (2017), and therefore the Court considers only Claim (3)(B)(1) in this part of the discussion.

U.S. at 273 ("[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims."). Morris argues that *Ramirez*, relying on principles of comity and federalism, endorsed petitioners returning to state court to exhaust their claims. *See, e.g.*, 142 S. Ct. at 1732 (citing *Rose v. Lundy*, 455 U.S. 509, 520 (1982)) (noting "a federal court is not required to automatically deny unexhausted or procedurally defaulted claims" and that a "prisoner might have an opportunity to return to state court to adjudicate the claim.").

In support of this assertion, Morris calls on *Guevara-Pontifes v. Baker*, No. 3:20-cv-00652-ART-CSD, 2022 WL 4448259 (D. Nev. September 23, 2022), a case cited by the Court in *Pandeli*. The petitioner sought a stay to exhaust a claim of ineffective assistance of trial counsel, arguing, as Morris does here, that postconviction counsel's ineffectiveness in failing to raise the claim constituted good cause under *Rhines*. *Id.* at *3. The court held that *Ramirez* did not "concern the good cause requirements for a *Rhines* stay" and did not "foreclose a petitioner from demonstrating good cause for a stay based on post-conviction counsel's failure to raise an unexhausted claim in state court." *Id.* at *4. The court also rejected the argument that a stay would be futile based on Nevada's procedural default bars. *Id.* at *4–5 (citing *Brown v. McDaniel*, 130 Nev. 565, 331 P.3d 867 (2014)). The court explained that if the stay were granted the petitioner "can argue to the Nevada Supreme Court, that in light of the Supreme Court's decision in *Ramirez*, it should overrule *Brown* and permit the use of the principles set forth in *Martinez* for purposes of overcoming state procedural bars." *Id.* at *5. The court granted the *Rhines* stay, finding that the allegation of ineffective assistance of postconviction counsel constituted "good cause." *Id.* at *3.

*Martinez* has no relevance to an Arizona Rule 32 proceeding. *See State v. Escareno–Meraz*, 232 Ariz. 586, 587, 307 P.3d 1013, 1014 (App. 2013) ("*Martinez* does not alter established Arizona law."). A claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding. *See id.* "Nor can the underlying claim of ineffective assistance of trial counsel be directly raised in an untimely

and successive post-conviction proceeding.  Ariz. R. Crim. P. 32.4(a)."  *State v. Perez*, No. 1 CA-CR 14-0592 PRPC, 2016 WL 6301101, at *1 (Ariz. Ct. App. Oct. 27, 2016).

Morris's claim that Arizona courts will reexamine their procedural rules in light of *Ramirez* is similarly meritless.  In *Ramirez*, the Supreme Court held that in adjudicating a *Martinez* claim, "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state post-conviction counsel" unless the petitioner satisfies the stringent requirements of 28 U.S.C. § 2254(e)(2).  142 S. Ct. at 1734.  Until *Ramirez*, in other words, petitioners like Morris had the opportunity to present new evidence in federal court pursuant to *Martinez*.  *Ramirez* had no effect on state post-conviction proceedings or preclusion rules, nor did it render any of Morris's claims unexhausted rather than technically exhausted.

Because Claim 13 is denied as plainly meritless and Claims 3(B)(1) and 22(D) are technically exhausted, the petition is not mixed, and *Rhines* is not applicable.  Morris is not entitled to a stay.  Further, because the Court has now considered and rejected Morris's motion to stay based on the merits of Claim 13 and the technical exhaustion of his related IAC claims, the Court lifts the stay previously granted pending the decision of the Arizona Supreme Court on remand of the *Cruz* decision.  (*See* Doc. 77.)

## IV.    APPOINTMENT OF COUNSEL

Morris asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court.  The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures."  18 U.S.C. § 3599(e). The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation."  *Id.* at 194.  The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185.  The Court also noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client.  Rather, "counsel's

representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id.* at 189.

As to state post-conviction proceedings, the Court noted, "State habeas is not a stage 'subsequent' to federal habeas. . . . That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), *cert. denied sub nom. Lugo v. Jones*, 574 U.S. 1125 (2015) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief. . . .").

Nevertheless, the Court has discretion to appoint federal counsel to represent Morris in state court. In *Harbison* the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

Here, however, the Court has determined that Morris is not entitled to a *Rhines* stay.[9] Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court finds it is not appropriate to authorize the FPD to

---

[9] Because the Court denies Morris's request for a *Rhines* stay and his motion for authorization to represent him in state court, it does not consider Morris's separate request to permit counsel to raise Morris's competency claims in state court.

represent Morris in state court.[10]

## V.       CONCLUSION

Morris has not demonstrated that a *Rhines* stay is warranted. Claim 13 is plainly meritless and will be denied. Morris's *Simmons*-related IAC claims are technically exhausted and his petition therefore is not mixed. "The point of a *Rhines* stay is to allow a federal habeas petitioner an opportunity to present unexhausted claims in state court." *Pritchett v. Gentry*, No. 217CV01694JADDJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022); *see Anderson v. Jennings*, No. 1:19-CV-00014 JAR, 2022 WL 17480616, at *3 (E.D. Mo. Nov. 21, 2022).  In addition, granting Morris's request for a *Rhines* stay would be contrary to the Supreme Court's directive that such stays should be granted only in limited circumstances and that courts must be 'mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court.'" *Id.* (quoting *Rhines*, 544 U.S. at 276–77).

**IT ORDERED denying** Claim 13 (in part), **denying** Morris's Motion for a Stay and Abeyance (Doc. 81), and **denying** Morris's request for federal habeas counsel to represent him in state court (*id.*).

**IT IF FURTHER ORDERED lifting** the stay previously granted by the Court in Doc. 77 and taking Morris's habeas petition and request for evidentiary development under advisement.

Dated this 28th day of June, 2023.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

---

[10] In support of his request for authorization, Morris refers the Court to Ex. C, Judge Claire V. Eagan, Memorandum re Use of Defender Services Appropriated Funds by Federal Appointed Counsel for State Court Appearances in Capital Habeas Corpus Cases (Dec. 9, 2010)).  Notably, Judge Eagan states that the memorandum is intended to address the issue of expending federal funds in state court once a determination has already been made that it is permissible for a claim to be remanded to state court for exhaustion.  *Id.* at 2.