**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cory D. Morris,<br>  Petitioner,<br>v.<br>Ryan Thornell, et al.,[1]<br>  Respondents. | No. CV-17-00926-PHX-DGC<br>**ORDER**<br><u>DEATH PENALTY CASE</u> |

Cory Morris is an Arizona death row inmate seeking federal habeas relief. He moves for reconsideration of the Court's order declining to stay these proceedings and authorize his federal habeas counsel to represent him in state court. (Doc. 87.) Morris asserts reconsideration is warranted based on the Arizona Supreme Court's recent opinion in *State v. Anderson (Larry)*, 546 P.3d 345 (Ariz. May 2, 2024). Morris's motion is fully briefed. (Docs. 89, 90.) For the reasons that follow, the Court denies Morris's motion for reconsideration.

**I.   BACKGROUND**

In 2005, Morris was convicted of and sentenced to death for five counts of first-degree murder. *State v. Morris*, 160 P.3d 203, 211 (Ariz. 2007). The Arizona Supreme Court affirmed the convictions and sentences in 2007. *Id.* at 222. On February 20, 2018,

---

[1] Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Ryan Thornell, the Director of the Arizona Department of Corrections, Rehabilitation and Reentry, is substituted for the former Director, David Shinn.

following unsuccessful state post-conviction proceedings, Morris filed his Petition for Writ of Habeas Corpus. (Doc. 21.) Morris's fully briefed petition and request for evidentiary development of his claims are pending before the Court. (Docs. 21, 43.)

In Claim 13 of his habeas petition, Morris alleges a violation of his right to be sentenced by a jury correctly informed of his ineligibility for parole under *Lynch v. Arizona ("Lynch II")*, 578 U.S. 613 (2016) (per curiam), and *Simmons v. South Carolina*, 512 U.S. 154 (1994).[2] (*See* Doc. 21 at 251–56). In Claims 3(B)(1) and 22(D), Morris alleges the ineffective assistance of trial and appellate counsel for failing to object to an instruction that incorrectly informed the jury that Morris could be sentenced to life with the possibility of parole. (*See id.* at 165–69, 298.)

On May 8, 2023, Morris filed a motion to stay these proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to permit exhaustion of the *Simmons*-related claims. (Doc. 81.) The Court denied the motion, finding Claim 13 meritless and Morris's ineffective assistance of counsel (IAC) claims technically exhausted through procedural default. (Doc. 84 at 18.) The Court determined that Morris's fully exhausted habeas petition was thus ineligible for a stay under *Rhines*. (*Id.*) Morris now argues that the Arizona Supreme Court's decision in *Larry Anderson* calls into question the Court's technical exhaustion ruling regarding Claims 3(B)(1) and 22(D) and, further, supports the merits of the claims.

**II.   DISCUSSION**

Applicable Law

A district court may grant a motion to reconsider only in "highly unusual circumstances." *School Dist. No. 1J. Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was

---

[2] In *Simmons*, the Supreme Court held that when a capital defendant's future dangerousness is at issue and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible. 512 U.S. at 156, 171. In *Lynch II*, the Supreme Court held that Arizona capital defendants are ineligible for parole for purposes of a *Simmons* instruction. 578 U.S. at 616.

- 2 -

manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* Under the rules of this District, motions to reconsider are granted only if the movant makes a showing of "manifest error or new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv. 7.2(g).

*Rhines* authorizes a district court to stay a petition in "limited circumstances" to allow a petitioner to present unexhausted claims to state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations. 544 U.S. 269, 273–77. Under *Rhines*, "a district court must stay a mixed petition only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278). Courts must be mindful that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court. *Id.* (citing *Rhines*, 544 U.S. at 276–77).

Analysis

Morris was diligent in bringing this motion to reconsider within days of the ruling in *Larry Anderson*. *See* LRCiv. 7.2(g). The Court concludes, however, that while *Larry Anderson* is an intervening change in the law regarding Arizona's application of its preclusionary rules, the decision does not apply to Morris's case. Therefore, the Court denies Morris's motion for reconsideration.

Because *Rhines* applies only to mixed petitions, *see King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009), a *Rhines* stay would be inappropriate if the claims for which a petitioner seeks a stay are technically exhausted through procedural default. *See e.g.*, *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, No. CV-09-2167PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply." ).

In denying Morris's request for a stay, the Court found Claims 3(B)(1) and 22(D) technically exhausted through procedural default, rendering his petition ineligible for a *Rhines* stay. (Doc. 84 at 12, 18.) Specifically, the Court found that "[i]f Morris were to return to state court and attempt to exhaust these ineffective assistance claims, the claims would be found waived under Rule 32.2(a) because they do not fall within an exception to preclusion." (Doc. 84 at 12.)

Morris argues that the Court should reconsider its prior order and find the *Simmons*-related IAC claims unexhausted because, after *Larry Anderson*, he would not be precluded from raising those claims in state court, contrary to the Court's ruling. Respondents maintain Morris's claims remain precluded in state court, and thus his claims are technically exhausted and ineligible for a *Rhines* stay.

In *Larry Anderson*, the Arizona Supreme Court considered whether the petitioner's third PCR petition raising an IAC claim was precluded or untimely under Arizona Rules of Criminal Procedure. *Larry Anderson*, 547 P.3d at 348. In 2000 and 2003, Anderson filed PCR petitions based on unrelated claims of IAC. *Id.* In 2022, Anderson brought his third IAC claim, alleging his trial counsel erroneously advised him that if he rejected the plea offered and was found guilty at trial, parole would be available after he served twenty-five years. *Id.* Such advice, if given, was incorrect. Anderson, like Morris, was not parole eligible because he committed a felony after 1993. *See id.* (citing A.R.S. § 41-1604.09(I)).

The *Larry Anderson* court first reaffirmed Arizona's rules of preclusion are applicable to successive IAC claims:

> "The ground of ineffective assistance of counsel cannot be raised repeatedly." *Stewart v. Smith*, 202 Ariz. 446, 450 ¶ 12, 46 P.3d 1067, 1071 (2002). Generally, "where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded." *State v. Spreitz*, 202 Ariz. 1, 2 ¶ 4, 39 P.3d 525, 526 (2002) (emphasis omitted). This Court has rejected an approach to Rule 32 proceedings that would create "a never-ending tunnel" in which "defendants could endlessly litigate effectiveness of counsel by claiming that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation." *State v. Mata*, 185 Ariz. 319, 334, 916 P.2d 1035, 1050

(1996).

*Id.* at 351. This Court relied on these same established rules in concluding Claims 3(B)(1) and 22(D) would clearly be precluded if Morris attempted to raise them in a successive state court PCR. (*See* Doc. 84 at 12.)

*Larry Anderson* also found, however, that the court's review of Anderson's successive IAC claim was warranted due to the "extremely rare set of circumstances in the context of the pervasive confusion [in Arizona] about parole and the extraordinary remedies [the court] and the legislature fashioned to deal with it." *Larry Anderson*, 547 P.3d at 351–52, 353 n.1. Excusing the untimeliness of the claim, the court determined the delay in filing was not due to Anderson's "mere failure to recognize a valid claim might exist," but rather was attributable to the widespread confusion about parole availability. *Id.* at 350; *see also id.* at 348 (explaining that there was "pervasive confusion by both bench and bar about parole availability after it was abolished in Arizona").

The court also found the claim was not precluded in view of the court's "duty to 'construe [rules of criminal procedure] to secure . . . fairness in administration . . . and to protect the fundamental rights of the individual while preserving the public welfare.'" *Id.* at 352 (quoting Ariz. R. Crim. P. 1.2.). The court determined it was appropriate to exercise this equitable exception because at the time Anderson filed his previous PCR petitions, his claim would not have been "cognizable" as a "known" claim:

> This case presents unusual . . . circumstances. Anderson filed previous petitions for PCR in 2000 and 2003. At that time, defendants, attorneys, and courts did not know of or recognize the error due to the confusion regarding the abolition of parole. Counsel's error here was less an issue of individual IAC as it was a systemic failure to recognize the effect of the change in the law regarding parole. As a result of those unusual circumstances, Anderson's 2022 notice of IAC claim was the first time he could have reasonably raised the issue of erroneous advice about the availability of parole.[3] Indeed, as amicus MCAO concedes, "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice IAC claim where the late

---

[3] Anderson did not discover his parole ineligibility until he attempted to enroll in an educational program through the Arizona Department of Corrections, Rehabilitation, and Reentry prior to filing his third PCR. *Anderson*, 547 P.3d at 348.

- 5 -

> discovery of the claim's basis would have been excused." For the same reasons Anderson's claim is not untimely, it was not cognizable as a "known" claim.

*Id.* at 351. The court explained that trial courts had been using the words "parole" and "release" interchangeably in non-natural-life sentences since 1994, and prison policies were unclear about parole eligibility until as recently as 2021. *Id.* at 350. Additionally, the court explained, any research conducted by Anderson's previous PCR counsel would have been tainted as a result of the confusion. *Id.* at 353, n.1.

The question for this Court then, is whether, after *Larry Anderson*, it remains clear that the Arizona courts would hold Morris's *Simmons*-related IAC claims barred. *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005). The Court finds the "unique circumstances" and widespread confusion surrounding parole ineligibility which served to excuse the delay and preclusion of Anderson's plea-related IAC claim were dispelled as they relate to Morris's *Simmons*-related IAC claims well before Morris sought federal habeas review of his claims.

The Arizona Supreme Court addressed the parole ineligibility provision of A.R.S. § 14-1604.09(I) in a published decision in 2012. In *State v. Cota*, 272 P.3d 1027, 1042 (Ariz. March 22, 2012), the court rejected Cota's argument that the trial court erred by instructing the jury that a life sentence might allow for release after twenty-five years because Cota was not eligible for parole under A.R.S. § 41-1604.09(I). *Id.* Without commenting directly on Cota's parole eligibility, the court explained that Cota's argument conflated the terms "parole" and "release," and found the instructions were not given in error because Cota was eligible for other forms of release besides parole. *Id.*

In 2013, the Arizona Supreme Court acknowledged that the legislature had amended § 13-751 to eliminate a capital defendant's eligibility for a sentence of life imprisonment with the possibility of release. *Benson*, 307 P.3d at 32 (citing 2012 Ariz. Sess. Laws, ch. 207, § 2 (2d Reg. Sess.)). However, despite a plethora of lower court decisions acknowledging that under A.R.S. § 41-1604.09(I) parole was no longer available for felons

convicted after 1994[4], the court continued to indicate parole was available for those sentenced before the 2012 amendments. *Id.*

Finally, in 2015, while Morris's PCR proceedings were pending in state court, the Arizona Supreme Court directly and explicitly acknowledged, in *State v. Lynch ("Lynch I")*, that "parole is available only to individuals who committed a felony before January 1, 1994, and juveniles." 357 P.3d 119, 138 (2015) (citing A.R.S. § 41-1604.09(I)).

Even if the Arizona Supreme Court's mistaken belief "that Arizona's sentencing and parole scheme did not trigger application of *Simmons*" continued to create confusion surrounding the availability of parole, this confusion was put to rest in *Lynch II*. *Cruz v. Arizona*, 598 U.S. 17, 20 (2023). *Lynch II* rejected the Arizona Supreme Court's reasoning that the possibility of clemency or future legislative reform could justify refusal to give a parole-ineligibility instruction. *Lynch II* was decided on May 31, 2016, almost ten months before the Arizona Supreme Court summarily denied Morris's petition for review on March 14, 2017.

Unlike Anderson, who discovered his parole ineligibility when he applied for an

---

[4] *See e.g., State v. Rosario*, 987 P.2d 226, 230 (Ariz. Ct. App. 1999) ("The Arizona legislature enacted law effective January 1, 1994, eliminating the possibility of parole for crimes committed after that date. See A.R.S. § 41-1604.09(I)."); *State v. Sperberg*, No. 2 CA-CR 2010-0156-PR, 2010 WL 4286203, at *1 (Ariz. Ct. App. Oct. 27, 2010) (same); *State v. Norzagaray*, No. 2 CA-CR 2011-0266, 2013 WL 1316745, at *3 (Ariz. Ct. App. Apr. 1, 2013) ("Norzagaray was 'on parole' although that term to describe early release was abandoned for offenses committed after December 31, 1993. *See* A.R.S. § 41-1604.09(I)."); *State v. Melcher*, No. 2 CA-CR 2012-0158, 2013 WL 2378573, at *1 (Ariz. Ct. App. May 29, 2013) ("[P]arole has been unavailable since 1994, A.R.S. 41-1604.09(I)."); *State v. Godinez*, No. 2 CA-CR 2013-0114-PR, 2013 WL 3788427, at *3 (Ariz. Ct. App. July 17, 2013) ("[P]arole eligibility classification and certification 'applies only to person who commit felony offenses before January 1, 1994'") (quoting A.R.S. § 41-1604.09(I)); *State v. Taylor*, No. 2 CA-CR 2013-0302-PR, 2013 WL 5516199, at *2 (Ariz. Ct. App. Oct. 2, 2013) "[P]arole is only available . . . to defendants who committed their offenses before January 1, 1994, A.R.S. § 41-1604.09(I)."); *State v. Healer*, No. 2 CA-CR 2013-0372-PR, 2014 WL 310533, at *2 (Ariz. Ct. App. Jan 28, 2014) ("Arizona . . . has eliminated parole for those convicted of felony offenses committed after 1993. *See* A.R.S. § 41-1604.09(I).").

education program in prison, Morris was continuously represented in state court by capital-qualified counsel. Had PCR counsel reviewed the relevant sentencing and parole statutes, in addition to the Arizona and Supreme Court cases discussing the unavailability of parole after 1994 and how *Simmons* applies to Arizona's sentencing scheme, they would have been on notice by 2015 or 2016 at the latest that Morris's sentencing jury was incorrectly instructed that, if it rejected a death sentence, the court could sentence Morris to either natural life or life with the possibility of release after twenty-five years.[5]

Therefore, unlike Anderson, Morris's failure to exhaust was based on a "mere failure to recognize a valid claim might exist," and was not due to the widespread confusion about parole availability. *See id.* at 350. Morris's state court PCR counsel should have been aware of his ineligibility for parole by 2015 and understood the significance of parole ineligibility for a *Simmons* claim no later than the decision in *Lynch* II in 2016. It is therefore clear that the narrow equitable exception applied in *Larry Anderson* is not available for Morris's parole-eligibility IAC claim because the alleged sentencing error was known and recognized well before his PCR proceedings concluded in state court.

Because Claims 3(B)(1) and 22(D) would still be precluded if Morris were to return to state court and raise them in a successive PCR, they remain technically exhausted, the petition is not mixed, and a *Rhines* stay remains unavailable.

**IT IS ORDERED denying** Morris's motion for reconsideration (Doc. 87).

Dated this 20th day of June, 2024.

David G. Campbell
Senior United States District Judge

---

[5] Morris concedes that at the time of his PCR petition, other counsel "were challenging *Simmons* errors in Arizona, so Morris's post-conviction counsel did not adhere to the prevailing professional norms at this time by failing to similarly challenge the error." (Doc. 34 at 80.) Morris further acknowledges Arizona was "misapplying *Simmons*" until "the Supreme Court intervened in 2016." (Doc. 34 at 81.)